IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )  | |
| ) | |
| v.   ) | Case No.: 2:19cr142-WKW-SMD |
| ) | |
| TANEILIAN MCARTHUR ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant is charged in a superseding indictment with a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. (Doc. 55). The firearm forming the basis of the underlying charge was discovered in Defendant's apartment by a maintenance supervisor who entered the apartment after Defendant was arrested for disorderly conduct by a Montgomery Police Department ("MPD") officer. After the MPD officer learned of the maintenance supervisor's discovery, a search warrant was obtained for Defendant's apartment and the firearm was seized. Defendant moves to suppress the firearm, arguing that (1) his arrest for disorderly conduct was not supported by probable cause, and (2) his Fourth Amendment rights were violated when the maintenance supervisor, acting as an agent of the MPD, entered his apartment.

The Government responded (Doc. 38) to Defendant's motion and, on July 16, 2019, the undersigned conducted a suppression hearing on the matter. Upon consideration of Defendant's Motion, the Government's response, and the evidence and testimony adduced at the hearing, the undersigned Magistrate Judge RECOMMENDS that Defendant's Motion to Suppress (Doc. 24) be DENIED.

I.      **FINDINGS OF FACT**[1]

In January 2019, Defendant moved into The Heights Apartments ("The Heights") in Montgomery, Alabama. Tr. 111, 113. Within approximately ten days of Defendant's move-in date, staff at The Heights began to receive complaints about Defendant's strange behavior from other tenants, including a report that Defendant approached other residents, placed his hands on them, and told them that he could read their spirit through personal touch. Tr. 50, 111-12. Other complaints were made that Defendant barked like a dog from his balcony and around the complex's dumpster. Tr. 116-17, 120, 133-34. As a result of the tenants' complaints, The Heights management offered to refund Defendant's money in return for him vacating the property within seven days. Tr. 50-51. Defendant agreed. Tr. 48, 51, 65-66.

On February 7, 2019, Adam Wright, a police officer with the MPD, was driving down the highway in front of The Heights when he heard a "loud commotion" coming from his left. Tr. 14-16. He turned to identify the source of the commotion and observed Defendant yelling from his balcony at two individuals—later identified as Mr. Jeremy Bowie and Ms. Diane Chastain—who were standing on the sidewalk below. Tr. 16. Mr. Bowie was a regional maintenance supervisor for Stone River Property Management,[2] and Ms. Chastain was the Vice President of Stone River Property Management. Tr. 49-50, 71.

---

[1] The court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

[2] Stone River Property Management is the company that manages and oversees The Heights. Tr. 49-50, 71-72.

Officer Wright executed a U-turn and went back to investigate the disturbance. Tr. 17. He radioed the station and was informed that other officers were already en route to the scene. Tr. 17.

When Officer Wright parked and exited his vehicle, he heard Defendant yelling at Mr. Bowie and Ms. Chastain, who were attempting to provide Defendant with the refund check—prior to the seventh day—so that he would leave The Heights early. Tr. 48, 88, 137. Officer Wright heard Defendant telling Mr. Bowie and Ms. Chastain to "go away" and to "leave him alone." Tr. 17, 19, 21, 47-48, 50-51. Officer Wright heard Defendant "yelling obscenities" and "cursing everyone." Tr. 18, 20. Specifically, Officer Wright recalled Defendant calling Ms. Chastain a "bitch" and him a "white, cracker officer." Tr. 18. Defendant also threw items from his balcony, including a hat, a shirt, and a bottle of cologne, which was directed towards a female MPD officer. Tr. 20, 57.

After interacting with Defendant for approximately fifteen minutes, Officer Wright coaxed Defendant down from his apartment to the sidewalk. Tr. 20. Defendant brought with him a cane, a tray of food, and a bottle of water. Tr. 21. At some point, Defendant drank a sip of the water and spit it towards Officer Wright, hitting his shoes. Tr. 22, 81. Defendant continued to yell at and argue with the individuals on the sidewalk, saying things like "I'll fuck you up." Tr. 35. Eventually, Defendant got in Ms. Chastain's face and started barking like a dog, at which point Officer Wright placed him in handcuffs. Tr. 35-37; 58-59.

Officer Wright drove Defendant to the Montgomery Municipal City Jail, where Defendant was booked for disorderly conduct. Tr. 24, 25. After Defendant was taken away,

3

Mr. Bowie used The Heights's key to enter Defendant's apartment—with Defendant's permission—to return the items Defendant brought with him to the sidewalk. Tr. 60-61, 78-79, 124-25. While there, Mr. Bowie looked around the apartment and discovered a firearm in Defendant's backpack, which was lying partially unzipped on the bathroom counter. Tr. 47.

Officer Wright returned to The Heights after Defendant was booked into the jail. Tr. 25. He did so in order to warn the staff, who seemed fearful of Defendant, that Defendant would likely return after making bail. Tr. 25-26, 40. During his interaction with the staff, Officer Wright learned that Defendant had a firearm in his apartment.[3] Tr. 27-28, 40, 94, 125. Officer Wright knew, pursuant to arresting Defendant for disorderly conduct, that Defendant was a felon. Tr. 28. Armed with the information that a firearm was within Defendant's apartment, Officer Wright contacted Detective Antonio Goins, an MPD officer assigned to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Task Force, and a search warrant for Defendant's apartment was secured. Tr. 29, 43, 98-99. During the execution of the search warrant, officers seized the firearm from Defendant's bag in the bathroom. Tr. 29, 44.

Officer Wright testified that he did not ask Mr. Bowie to enter Defendant's apartment or to assist him with his investigation of Defendant in any way. Tr. 24. Similarly, Mr. Bowie testified that no one from law enforcement asked him to enter Defendant's

---

[3] There is some dispute as to whether Mr. Bowie told Officer Wright this information directly, or whether the information was obtained through Christine Kessler, the office manager for The Heights. Mr. Bowie testified that he told Ms. Kessler and that he "may have told Officer Wright." *See* Tr. 94. Officer Wright seems to recall that Mr. Bowie told him directly. *See* Tr. 40-41.

4

apartment or to assist them in their investigation of Defendant in any way. Tr. 80-81. Instead, both Officer Wright and Mr. Bowie testified that Defendant agreed to have Mr. Bowie return his items to his apartment after he was arrested. Tr. 24-25; 78-79.

## II.   DEFENDANT'S ARGUMENTS

Defendant presents two arguments for the Court's resolution: (1) whether Officer Wright's arrest of Defendant for disorderly conduct was supported by probable cause; and (2) whether Mr. Bowie's entry and search of Defendant's apartment violated his Fourth Amendment rights. *See generally* (Doc. 28).

## III.   DISCUSSION

### A. Whether Defendant's Arrest Was Supported by Probable Cause

An arrest made without probable cause is an unreasonable seizure under the Fourth Amendment. *See, e.g.*, *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). Probable cause to make an arrest is established "when the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (emphasis omitted) (quoting *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)). Whether probable cause exists is evaluated on the totality of the circumstances, and the subjective intentions of the officer are not considered. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Probable cause "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).

Here, Defendant was arrested for disorderly conduct. Alabama's disorderly conduct statute states:

> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . does any of the following:
>
>> (1) Engages in fighting or in violent tumultuous or threatening behavior.
>>
>> (2) Makes unreasonable noise.
>>
>> (3) In a public place uses abusive or obscene language or makes an obscene gesture.
>>
>> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons.
>>
>> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility.
>>
>> (6) Congregates with other person in a public place and refuses to comply with a lawful order of law enforcement to disperse.

Ala. Code §§ 13A-11-7(a)(1)-(6) (1975).

At the suppression hearing before the undersigned, Officer Wright testified that Defendant yelled obscenities from his balcony, threw items to the street below where several officers and The Heights's employees were present, spit water on his shoe, cursed the people on the sidewalk, and barked like a dog in the face of Ms. Chastain. Based upon this conduct, the undersigned concludes that Officer Wright had sufficient probable cause to arrest Defendant for disorderly conduct—at a minimum—under sections (1), (2), and (3) of Alabama's disorderly conduct statute. *See Powell v. State*, 796 So. 2d 404, 424-25 (Ala. Crim. App. 1999) (holding that "[b]ecause [the defendant] cursed loudly and used

abusive language in the presence of several police officers at the police station, the officers had sufficient probable cause to arrest [the defendant] for the misdemeanor offense of disorderly conduct."); *see also Ivey v. State*, 710 So. 2d 946, 947 (Ala. Crim. App. 1998) (testimony that guests of a birthday party overheard the defendant yell abusive language to a neighbor established a prima facie case of disorderly conduct); *Smith v. City of Anniston*, 668 So. 2d 96, 98 (Ala. Crim. App. 1995) (finding that "because the appellant made the offensive comment, not only to the police officer, but also in the presence of other individuals who could hear and react, whether his conduct amounted to disorderly conduct was a question of fact for the jury"). Therefore, because there was probable cause to arrest Defendant for disorderly conduct, the undersigned concludes that the arrest did not offend the Fourth Amendment.

### B. Whether Mr. Bowie's search of Defendant's Apartment Violated the Fourth Amendment.

A search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the Government. *United States v. Ford,* 765 F.2d 1088, 1090 (11th Cir. 1985). For a private person to be considered an agent of the Government, courts look to two factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends. *See United States v. Simpson,* 904 F.2d 607, 610 (11th Cir. 1990) (citing *United States v. Miller,* 688 F.2d 652, 657 (9th Cir. 1982)); *see also Ford,* 765 F.2d at 1090 (holding that the district court properly denied a motion to suppress where there was no evidence that the Government "had any pre-

7

knowledge of the search [or] that the agents openly encouraged or cooperated in the search"). Importantly, the Fourth Amendment "does not prohibit law enforcement's subsequent use" of information discovered by a private party who is not acting as a government agent. *Sparks*, 806 F.3d at 1334; *see also United States v. Coffell*, 720 F. App'x 521, 524 (11th Cir. 2017) ("[t]he Fourth Amendment does not prohibit the government's use of information discovered by a private party who is not acting as a government agent").

Here, Mr. Bowie was not asked by law enforcement to search Defendant's apartment; Officer Wright did not know that Mr. Bowie intended to search Defendant's apartment; and, there is no evidence that Mr. Bowie searched Defendant's apartment for the purpose of assisting law enforcement rather than for the purpose of furthering the interests of his employer. Therefore, because Mr. Bowie entered Defendant's apartment for reasons unrelated to law enforcement and because the Government did not know of and/or acquiesce in Mr. Bowie's actions, the undersigned cannot conclude that Mr. Bowie was acting as an instrument or agent of the Government. As such, Mr. Bowie's search of Defendant's apartment did not violate the Fourth Amendment, and the information he discovered during that search was lawfully used by law enforcement to secure the search warrant for Defendant's apartment. *See United States v. Coffell*, 720 F. App'x 521, 524 (11th Cir. 2017) (holding that the entry of a maintenance man into a trailer for the purpose of replacing the oven did not bar the Government's use of the information he discovered in obtaining a search warrant for the trailer).

IV.     **CONCLUSION**

Because there was probable cause to arrest Defendant for disorderly conduct and because Mr. Bowie's entry into Defendant's apartment did not offend the Fourth Amendment, the undersigned RECOMMENDS that Defendant's Motion to Suppress (Doc. 24) be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before October 29, 2019**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 15th day of October, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE