IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-142-WKW |
| | ) | [WO] |
| TANEILIAN McARTHUR | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Magistrate Judge's Recommendation (Doc. # 66) endorsing the denial of Defendant Taneilian McArthur's motion to suppress (Doc. # 24). Defendant filed objections to the Recommendation. (Doc. # 94.) Upon *de novo* review of the record and the Recommendation, *see* 28 U.S.C. § 636, including a close review of the transcript of the evidentiary hearing, the court finds that Defendant's objections are due to be overruled and that the Magistrate Judge's Recommendation is due to be adopted.

**I. STANDARD OF REVIEW**

*De novo* review requires that the district court independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990). If the Magistrate Judge made findings based on witness testimony, the district court must review the transcript or listen to a recording of the proceedings. *Id*. "'[T]o adequately determine the credibility of a witness . . . the

fact finder must observe the witness.'" *United States v. Powell*, 628 F.3d 1254, 1257 (11th Cir. 2010) (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1110 (5th Cir. 1980)). The requirement that the fact finder observe the witness is satisfied "'by the district judge accepting the determination of the magistrate [judge] after reading the record.'" *Id.* (quoting *Louis*, 630 F.2d at 1110) (alterations added). The district court also may, without holding a new hearing, modify findings in a way that is consistent with the Magistrate Judge's credibility determinations. *See Proffitt v. Wainwright*, 685 F.2d 1227, 1240–41 (11th Cir. 1982). However, the district court cannot reject a credibility determination without rehearing live testimony. *See Powell*, 628 F.3d at 1257.

## II. BACKGROUND

The Magistrate Judge's Recommendation sets out a full description of the facts, findings, and proceedings, which are not repeated here. Charged with the possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), Defendant moved to suppress the firearm seized pursuant to a state court warrant. After holding an evidentiary hearing, the Magistrate Judge entered a Recommendation that this court deny Defendant's motion to suppress. (Doc. # 66.) The Magistrate Judge came to two conclusions. First, he found that probable cause supported Defendant's warrantless arrest under Alabama's misdemeanor statute prohibiting disorderly conduct. *See* Ala. Code § 13A-11-7(a)(1)–(3). Second, he

concluded that the discovery of the firearm in Defendant's apartment by the complex's regional maintenance supervisor (Jeremy Bowie) did not violate the Fourth Amendment because there was no evidence that "Mr. Bowie was acting as an instrument or agent of the Government." (Doc. # 66, at 8.)

Defendant objects to both conclusions.

### III.  DISCUSSION

**A.   The Magistrate Judge's conclusion that probable cause existed for Defendant's arrest is supported by the evidence.**

The Magistrate Judge concluded that there was probable cause that Mr. McArthur violated the first three subsections of Alabama's misdemeanor statute criminalizing disorderly conduct. (Doc. # 66, at 5–7.) The statute provides in pertinent part:

> A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she does any of the following:
>
> (1) Engages in fighting or in violent tumultuous or threatening behavior.
> (2) Makes unreasonable noise.
> (3) In a public place uses abusive or obscene language or makes an obscene gesture.

§ 13A-11-7(a)(1)–(3).

Defendant argues that the Magistrate Judge's conclusion on probable cause is wrong for four reasons: (1) He was in his private residence, not in public; (2) he did

3

not make any threats in Officer Wright's presence, much less engage in "violent tumultuous or threatening behavior" (Doc. # 94, at 4–5 (citing § 13A-11-7(a)(1)); (3) he was not being unreasonably noisy within the meaning of § 13A-11-7(a)(2); and (4) he did not utter any "obscene or abusive language" in an public place. (Doc. # 94, at 5 (citing § 13A-11-7(a)(3).)  Upon careful review of the transcript of the evidentiary hearing, the court finds that Defendant's arguments lack merit.

First, Defendant's argument that he was in his private residence is factually incomplete.  Defendant's conduct commenced on his second-floor balcony and concluded on the public sidewalk below.  Mr. McArthur's screaming from his balcony reached decibels that could be heard plainly by the public standing below on the sidewalk and by those driving by on the adjoining roadway. (Doc. # 66, at 2–3.)  Additionally, Defendant's disturbance continued after he left his apartment and was on the public sidewalk; there, he yelled and cursed at the police officers and the complex's personnel, even capturing the attention of those passing by and stopping traffic. (Doc. # 66, at 3; Doc. # 65, at 22–23.)

A reasonable officer, knowing what Officer Wright observed at the time, objectively could have believed that probable cause existed for Defendant's arrest for disorderly conduct, either for engaging in threatening behavior, for making unreasonable noise, or for using abusive or obscene language in a public place.

First, Officer Wright observed Mr. McArthur within inches of Diane Chastain's face, barking like a dog and "biting like he was going to bite [her] face off." (Doc. # 65, at 58–59 (Tr. on H'rg on Mot. to Suppress).)  This erratic conduct, immediately followed by Mr. McArthur's statement to Ms. Chastain that "he was going to put [her] in a bag in a deep, black hole" (Doc. # 65, at 59), caused Officer Wright to arrest Mr. McArthur (Doc. # 65, at 36).  If Mr. McArthur's actions and statement are not "threatening behavior," then it is difficult to envision what is.  *See* § 13A-11-7(a)(1).

Second, Mr. McArthur's shouting from his second-floor balcony was loud enough that Officer Wright, while driving by on the street below, was able to hear it through the closed windows of his patrol vehicle.  (Doc. # 65, at 16.)  When Mr. McArthur continued his yelling and cursing on the sidewalk below, it also was loud enough to attract a crowd of onlookers.  *See Ivey v. State*, 710 So. 2d 946, 947 (Ala. Crim. App. 1998) (upholding a conviction for disorderly conduct where the defendant's yelling abusive language at his next door neighbor was heard by the neighbor's guests who were attending a child's birthday party); (Doc. # 65, at 22–23.)  A reasonable officer could have concluded that Mr. McArthur's noise level was unreasonable.  *See* § 13A-11-7(a)(2).

Third, like the defendant in *Powell v. State*, 796 So. 2d 404, 424–25 (Ala. Crim. App. 1999), *aff'd sub nom. Ex parte Powell*, 796 So. 2d 434 (Ala. 2001), Mr.

5

McArthur "loudly use[d] profanity" and "was cursing" and "directing profane or abusive language toward" Officer Wright, other officers, and citizens. *Powell*, 796 So. 2d at 425 (holding that the officers "had sufficient probable cause to arrest Powell for the misdemeanor offense of disorderly conduct"); (*see also* Doc. # 66, at 6–7.)

In sum, a reasonable officer could have concluded that Defendant's conduct outlined above caused a public disturbance. At the very least, a reasonable officer could have concluded that Defendant was recklessly creating a risk of causing public inconvenience, annoyance, or alarm. *See* § 13A-11-7 (commentary) (explaining that § 13A-11-7's purpose is "to protect the public from being annoyed, inconvenienced or alarmed").

As the foregoing reveals, the testimony from the Government's witnesses at the suppression hearing belies Mr. McArthur's arguments that there is no evidence to support probable cause for his arrest for disorderly conduct. Accepting Mr. McArthur's arguments would require crediting Mr. McArthur's hearing testimony over all the other witnesses and rejecting the Magistrate Judge's credibility determinations. Having read the record, the court adopts the Magistrate Judge's findings of fact and his credibility choices. *See Powell*, 628 F.3d at 1257. That Officer Wright's testimony at the suppression hearing contained more detail than his testimony at Defendant's state court preliminary hearing does not require this court

to reconvene a hearing or to reconsider the Magistrate Judge's credibility determinations. Accordingly, Defendant's objections are due to be overruled.

**B.     The Magistrate Judge's conclusion that the search of Mr. McArthur's apartment did not violate the Fourth Amendment is supported by the evidence.**

The Fourth Amendment proscribes only governmental action; a search by a private citizen does not implicate the Fourth Amendment. *See United States v. Ford*, 765 F.2d 1088, 1089 (11th Cir. 1985). "The Fourth Amendment is applicable, however, when a private citizen acts as 'an instrument or agent of the state.'" *Id.* (citation and internal quotation marks omitted).

After a careful review of the transcript of the evidentiary hearing, the court finds that the evidence credited by the Magistrate Judge supports his finding that Mr. Bowie was not acting as an instrument or agent of the government when he searched Mr. McArthur's apartment.[1] The Magistrate Judge relied on the testimony that Mr. Bowie went alone into Mr. McArthur's apartment, with Mr. McArthur's permission, and that Officer Wright did not instruct him to search Mr. McArthur's apartment. (Doc. # 66, at 8; *see also* Doc. # 65, at 24, 62, 80).) The Magistrate Judge concluded that there was an absence of "evidence that Mr. Bowie searched Defendant's

---

[1] At the hearing on the motion to suppress, the prosecutor "stipulate[d] that Mr. Bowie searched [Mr. McArthur's] apartment." (Doc. # 65, at 47.) Mr. Bowie said that, when he returned Mr. McArthur's belongings to his apartment, his "mission was to go in and shut the windows and lock the doors." (Doc. # 65, at 79.) He did not open any closets or cabinets; however, he observed on the bathroom counter a backpack that was open. Peering into the opening of the bag, Mr. Bowie observed the butt of a firearm. (Doc. # 65, at 79.)

apartment for the purpose of assisting law enforcement rather than for the purpose of furthering the interests of his employer." (Doc. # 66, at 8.)

Defendant argues, though, that the Magistrate Judge "fail[ed] to take into account" that Officer Wright knew that Mr. Bowie was going to enter the apartment. (Doc. # 94, at 7.) Even if Officer Wright knew that Mr. Bowie had been requested to return Mr. McArthur's belongings to his apartment (Doc. # 65, at 24–25), there is no evidence that Officer Wright knew that Mr. Bowie was going to search the apartment for incriminating evidence. In other words, there is no evidence that Officer Wright had prior knowledge of Mr. Bowie's search that led to the discovery of the firearm in Mr. McArthur's apartment.

Mr. McArthur also argues that the Magistrate Judge erred in finding that the search was not for the purpose of assisting law enforcement uncover incriminating evidence. (Doc. # 94, at 8–9.) But this argument fails. The instructions Mr. Bowie received — to "just look around [Mr. McArthur's apartment] to see if you see anything that may be questionable" — came from private individuals, namely, his superiors at the apartment complex. (Doc. # 65, at 79, 93, 97.) Officer Wright did not give Mr. Bowie or any other staff member at the apartment complex any instructions when he left the scene to transport Mr. McArthur to jail. (Doc. # 65, at 24, 62.) He did not tell anyone to look in Defendant's apartment or to take any action in furtherance of an investigation of Mr. McArthur. (Doc. # 65, at 24.)

8

Mr. Bowie's testimony, which Defendant quotes in his brief, demonstrates that Mr. Bowie's superiors wanted him to look for "illegal things," like drugs, "*that are not allowed on our property.*" (Doc. # 65, at 93 (emphasis added).) A search by a private individual to further the interests of a property manager does not implicate Fourth Amendment concerns. *Cf. United States v. Sanchez-Paz,* No. 8:09-CR-411-T-30MAP, 2009 WL 4350115, at *3 (M.D. Fla. Nov. 24, 2009) ("The presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate fourth amendment interests, especially where the private party has had a legitimate independent motivation for conducting the search."), *aff'd*, 402 F. App'x 498 (11th Cir. 2010). While Defendant argues that it is suspicious that Officer Wright returned to the apartment complex after Mr. McArthur was booked, the court credits the Magistrate Judge's determination that Officer Wright "did so in order to warn the staff, who seemed fearful of Defendant, that Defendant would likely return after making bail." (Doc. # 66 (citing Doc. # 65, at 25–26, 40).) Overall, the evidence supports the Magistrate Judge's finding that Mr. Bowie entered and searched Mr. McArthur's apartment "for reasons unrelated to law enforcement" and to "further[] the interests of his employer," rather than the interests of law enforcement. (Doc. # 66, at 8.) And the court adopts the Magistrate Judge's credibility choices that underlie this conclusion. (Doc. # 66, at 3–4, 8.)

In sum, Mr. Bowie's private search of Defendant's apartment did not violate the Fourth Amendment. Defendant's objections are due to be overruled.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. The Magistrate Judge's Recommendation (Doc. # 66) is ADOPTED;

2. Defendant's objections (Doc. # 94) are OVERRULED; and

3. Defendant's motions to suppress (Doc. # 24) is DENIED.

DONE this 4th day of May, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE